IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2019 JAN -7 PM 2:57

| | | |
|---|---|---|
| RUBEN XAVIER MARTINEZ, INDIVIDUALLY AND AS NEXT FRIEND OF N.M., <br> PLAINTIFF, <br><br> V. <br><br> UNIVERSITY INTERSCHOLASTIC LEAGUE; DR. CHARLES BREITHAUPT, EXECUTIVE DIRECTOR; AND NEW DEAL INDEPENDENT SCHOOL DISTRICT, <br> DEFENDANTS. | § § § § § § § § § § § § § § | CAUSE NO. 1:18-CV-832-LY |

## MEMORANDUM OPINION AND ORDER

Before the court in the above-styled and numbered cause are Defendants University Interscholastic League ("UIL") and Dr. Charles Breithaupt's, Executive Director, Motion to Dismiss Plaintiff's First Amended Complaint filed November 20, 2018 (Dkt. No. 11) and Plaintiff Rueben Xavier Martinez's, individually and as Next Friend of N.M., Response and Brief in Support thereof to Defendant's Motion to Dismiss filed December 3, 2018 (Dkt. No. 12). Having reviewed the motion, response, applicable law, and the entire case file, the court will grant the motion for the reasons that follow.

I. **BACKGROUND**

Plaintiff Ruben Martinez's son, N.M., was a student at New Deal High School ("New Deal") in the New Deal Independent School District ("New Deal ISD") in Lubbock County, Texas. N.M. lived with his mother in New Deal ISD until April of 2016 before moving in with his father, Martinez, who resides within the attendance boundaries of Cooper High School ("Cooper") in the Cooper Independent School District ("Cooper ISD"). Despite moving out of

New Deal ISD, N.M. continued to attend New Deal for the remainder of his eighth-grade year, all of his freshman year, and half of his sophomore year.

One of N.M.'s best friends is J.J. Through N.M.'s friendship with J.J., Martinez met J.J.'s mother, Natasha. Martinez and Natasha married in August of 2017. Natasha's second child, E.J., has learning disabilities. Natasha, J.J., and E.J. moved out of New Deal ISD and moved in with N.M. and Martinez in Cooper ISD. Cooper ISD is a large school district, and Natasha felt that it was better equipped to effectively deal with E.J.'s learning disability. E.J. and J.J. left New Deal and enrolled in schools in Cooper ISD. J.J., who is also a football player, wanted to stay at New Deal with N.M. for his sophomore year, but was not permitted to remain enrolled at New Deal. However, N.M., who developed into a talented football player and track athlete, was permitted to stay at New Deal despite not living in New Deal ISD. During the fall of 2017, Martinez drove N.M. to and from New Deal, approximately 20 miles each way. This daily trip was time-consuming and expensive.

In January of 2018, N.M. enrolled in Cooper. When New Deal's football coach learned that N.M. had enrolled in Cooper, he told Martinez that if N.M. returned to New Deal within 24 hours, the school would allow J.J. to attend New Deal as well. Martinez declined the offer and the coach became upset. Allegedly, New Deal falsely reported to UIL that N.M. transferred to Cooper for "athletic purposes" and New Deal did so for "the sole purpose of punishing [N.M.] for enrolling in a different school." UIL accepted New Deal's claim, determined that N.M. enrolled at Cooper for athletic purposes, declared N.M. ineligible to play varsity sports until January 2019, and denied N.M.'s appeal of his ineligibility.

Martinez argues that athletics did not play a role in the decision for N.M. to enroll at Cooper in January of 2018. N.M. is a straight-A student ranked 15th in a class of 400. Cooper is

a much larger school than New Deal and Martinez asserts it offers significantly more educational opportunities, such as an abundance of dual credit, accelerated, and AP courses not available at New Deal. N.M. enrolled at Cooper primarily because of the wealth of educational opportunities offered by Cooper, Cooper's proximity to N.M.'s home, and N.M.'s close relationship with J.J., who also attends Cooper.

On November 8, 2018, Martinez filed a First Amended Complaint (Dkt. No. 10) under Section 1983, alleging violations of the 14th Amendment of the United States Constitution. *See* 42 U.S.C. § 1983. Martinez alleges that UIL violated N.M.'s constitutional rights to equal protection of the law, due process, and a public education. Martinez asks the court to issue an injunction to prevent UIL from enforcing its decision to prevent N.M. from participating in varsity sports until January 2019.

Defendants UIL and Breithaupt[1] move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Martinez fails to state a claim for any constitutional violation. The court concludes that Martinez fails to adequately state an underlying constitutional claim. The court will grant the motion and dismiss Martinez's claims against UIL with prejudice.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401

---

[1] As the interests of UIL and Breithaupt do not diverge, the court will refer to them generally as "UIL," unless otherwise noted or as needed for context.

3

(5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

### III. ANALYSIS

Martinez brings this action under Section 1983 alleging three underlying constitutional violations: (1) UIL violated N.M.'s constitutional right to equal protection; (2) UIL violated N.M.'s right to due process; and (3) UIL violated N.M.'s constitutional right to an education. *See* 42 U.S.C. § 1983. However, "the gravamen of the complaint here is the denial of the right to participate in interscholastic sports," not the right to equal protection, the right to due process, or the right to an education. *Niles v. Univ. Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983). The Fifth Circuit "has considered many variations of claims alleging infringement of constitutional rights in the context of eligibility rules for competition in interscholastic leagues and has uniformly rejected constitutional challenges to those rules." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 136 (5th Cir. 2009). Thus, although the court will examine each alleged constitutional violation, the court for the foregoing reasons will dismiss all claims against UIL.

4

### a. UIL did not violate N.M.'s right to equal protection under the law.

Martinez raises a "class of one" equal-protection claim. To bring such a claim, Martinez must show that "(1) [N.M.] was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012). "The complaint must allege the existence of purposeful discrimination motivating the state action which caused the alleged injury." *Thompson v. Morgan*, 698 F. App'x 169, 170 (5th Cir. 2017) (internal quotation marks omitted). Class-of-one equal-protection claims are "available where there is 'a clear standard against which [different treatment], even for a single plaintiff, could be readily assessed.'" *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016).

Martinez alleges that N.M. received unfavorable treatment as compared to other unnamed similarly situated student athletes. Martinez specifically alleges that N.M. was treated differently as compared to J.J., N.M.'s stepbrother. Martinez contends that J.J. and N.M. are similarly situated in that J.J. is the same age as N.M., lives in the same home as N.M., played football at New Deal, and transferred to Cooper after moving out of New Deal ISD. Martinez argues that New Deal violated N.M.'s right to equal protection because New Deal reported that N.M. had moved to Cooper for athletic purposes and did not do so when J.J. moved to Cooper. In its motion to dismiss, UIL argues that "Martinez alleges no facts regarding differential treatment by UIL." In response, Martinez contends that UIL was aware that J.J. and N.M. were treated differently by New Deal, and therefore, when UIL banned N.M. from varsity sports, it intentionally treated N.M. and J.J. differently.

Although J.J. is similarly situated to N.M. in some respects, he is not similarly situated in "all material respects." *Thompson*, 698 F. App'x. at 170. Martinez's pleadings describe UIL's

process for determining eligibility as beginning with a school's report that a student transferred schools for the purpose of athletics. New Deal began that process with N.M. by filing such a report. New Deal did not do so with J.J. Importantly, Martinez has not alleged that UIL had an opportunity to determine that J.J. eligibility to play varsity sports. As such, J.J. did not appear before UIL, and UIL did not determine J.J.'s eligibility. UIL did not intentionally treat N.M. and J.J. differently because it did not have an opportunity to do so. Thus, Martinez has failed to allege "a clear standard against which [different treatment] . . . could be readily assessed." *Integrity Collision*, 837 F.3d at 587 (internal quotation marks omitted).

Having determined that Martinez fails to plead sufficient facts to show that J.J. and N.M. are similarly situated, this court concludes that Martinez's general claim that N.M. was treated differently than other similarly situated athletes is conclusory. Even if Martinez has sufficiently alleged the existence other similarly situated individuals, the UIL's classification of student athletes as eligible or ineligible does not violate the Equal Protection Clause. *Hardy v. Univ. Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir. 1985). Therefore, this court will dismiss Martinez's equal-protection claims against UIL.

### b. UIL did not violate N.M.'s right to due process.

The Due Process Clause protects "fundamental rights" that give rise to a "legitimate claim of entitlement," not "lesser interests" or "mere expectations." *Niles*, 715 F.2d at 1031 (internal quotation marks omitted). In *Hardy*, the Fifth Circuit concluded that substantive due process is not applicable in a case involving eligibility in interscholastic sports. 759 F.2d at 1234. "Participation in interscholastic athletics is not an 'interest' protected by the Due Process Clause." *Id.* Further, "the right to procedural due process is applicable only to state action

which impairs a person's interest in either liberty or property." *Id.* (citing *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 4 (7th Cir.1974)).

Martinez alleges that UIL violated N.M.'s right to due process because, when N.M. appealed UIL's decision to declare him ineligible to play varsity sports, UIL did not hold evidentiary hearing and N.M. was not given an opportunity to cross-examine witnesses. The court concludes that UIL did not violate N.M.'s right to due process, because N.M.'s interest in participating in interscholastic varsity sports is not protected by the Due Process Clause. *See id.* The court will dismiss Martinez's due-process claims against UIL.

### c. UIL did not violate N.M.'s right to public education.

"Public education is not a 'right' granted to individuals by the Constitution." *Plyler v. Doe*, 457 U.S. 202, 221 (1982). However, "a student has a property interest in continued receipt of an education when the state creates a public school system and requires children to attend." *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 393 (5th Cir. 2011). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Martinez asserts that "while a student may not have a constitutional right to participate in extracurricular activities," UIL violated N.M.'s "constitutional right to a free public education" by attempting to use athletics to "force [N.M.] to attend a school (New Deal) which was outside his home district and which he was not required to attend." In response, UIL contends that N.M. was not deprived of his right to education because "Martinez pleads that N.M. attends (and thrives at) the school of his choice." This court agrees.

Martinez's claim that UIL violated N.M.'s right to public education fails because the complaint contains only conclusory statements that N.M. was deprived of his "property interest in continued receipt of education." *Swindle*, 655 F.3d at 393. N.M. is enrolled at Cooper and is currently "making all in A's" in his classes. In fact, when taking the factual allegations of the complaint as true, the court is persuaded that N.M. has access to more educational opportunities than he had previously at New Deal. UIL has not deprived N.M. of his right to public education because N.M. attends Cooper, a public school. Simply put, no deprivation has occurred. Therefore, the court will dismiss Martinez's claim that UIL deprived N.M. of his right to public education. The only claims that remain are against Defendant New Deal ISD. Accordingly,

**IT IS THEREFORE ORDERED** that Defendants University Interscholastic League and Dr. Charles Breithaupt's, Executive Director, Motion to Dismiss Plaintiff's First Amended Complaint filed November 20, 2018 (Dkt. No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Ruben Martinez, individually and as Next Friend of N.M.'s, claims against the University Interscholastic League and Dr. Charles Breithaupt are **DISMISSED WITH PREJUDICE**.

Martinez's claims against New Deal Independent School District remain pending.

SIGNED this 7th day of January, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE